## GLENN *et al. v.* MALONY.

If a conveyance of real estate be so uncertain in its description, that it cannot be known what estate was intended, the conveyance will be void.

If the description in the instrument includes several particulars, all of which are necessary to ascertain the estate to be conveyed, none will pass, except such as corresponds with every particular of the description.

But if there are certain particulars, once sufficiently ascertained, which desig-

Glenn et al. v. Malony.

nate the thing intended to be granted; the addition of a circumstance, false or mistaken, will not frustrate the grant.

The language used in the instrument or conveyance, must be reasonably construed; and the identity of the land ascertained from the entire description.

If there shall be in the instrument, a repugnant call, which by the other descriptive terms, clearly appears to have been made through mistake, the conveyance is not void, by reason of such repugnant call.

When the instrument is applied to its subject matter, if it be found that the description in it, is true in part, but not true in every particular, so much of it as is false, is to be rejected; and the conveyance will take effect, if sufficient remains to ascertain its application.

Where in a proceeding in Chancery to recover the undivided half of lot 73 in the city of Dubuque, brought by the residuary legatees of D. S. deceased, it appeared that at the time of S.'s death, the lot was owned and occupied in common by him and respondent; that their title thereto was a pre-emption right, established and recognized by the commissioners appointed for that purpose, under the act of Congress of October 26, 1836, and an act amendatory thereto of July 2, 1837; that the respondent and another, were the executors of said S.'s estate, and in due course of administration, sold all the real property of the testator, including the undivided half of the said lot; that the lot was bought by W. for its fair value, and by him afterwards conveyed to the respondent; that in November, 1854, the respondent obtained a patent for the lot from the United States; that the *inventory* of the testator's property, the notice of sale of said lot, and the return made by the executors of such sale, describe the property as "No. 7—town lot 72, on Main street, in the city of Dubuque,—the undivided half of said lot—*the whole being* owned by L. M. (the respondent) and D. S.;" that the appraisement describes it, as "No. 7—half of city lot, No. 72;" that the petition for the sale, prayed for an order to sell *all* the real estate of the testator, which embraced various parcels, among which was the "undivided half of lot 72, in the city and town of Dubuque;" that the fact of the application for an order to sell, was entered on the probate records of Dubuque county, in which the property in controversy, was described as "the undivided half of lot 72 in the city of Dubuque;" that an order was made, by the Probate Court, authorizing the executors "*to sell the whole of said real estate in the inventory thereof specified;*" that the deed to W., who purchased at the executor's sale, describes the premises as "the undivided half of lot 73, as designated on the government plat of said city of Dubuque; that the sale took place on the lot, and the bidders all understood that they were bidding on lot 73—the same being situate on the corner of Main and Third streets, while lot 72 is in another block, and was never owned by S. and M.; that in a subsequent report of the condition of the estate, the executors charge themselves with the sum of $1,112, for "the undivided half of lot 72;" that a final settlement of the estate was made in 1851, at which time the complainants were present, either personally or by attorney, and "*admitted the correctness of the account*," and were then paid the amount ascertained to be due each by the terms of the will; *Held*, 1. That so much of the description of

316 SUPREME COURT CASES.—1856.

Glenn et al. v. Malony.

the lot as was false, might be rejected, and the proceedings before the Probate Court, and the sale by the executors, sustained, on the ground that a sufficient description remained to show the application of those proceedings.

*Appeal from the Dubuque District Court.*

THE complainants, as the residuary legatees of David Sleator, deceased, claim of the respondent, the undivided half of lot 73 in the city of Dubuque. At the time of Sleator's death, this lot was owned and occupied in common by him and respondent, the title thereto being a pre-emption right duly established and recognized by the commissioners appointed for that purpose, under the act of Congress of October 26, 1836, and an act amendatory thereto of July 2, 1837. The respondent and another were executors of said decedent's estate, and in due course of administration sold all the real property, including, as is claimed, the undivided half lot in dispute. The lot was bought by Thomas S. Wilson, for what is shown to be its fair and reasonable value; and by him afterwards sold to respondent, who in November, 1854, obtained a patent from the United States, investing him with the full legal title to all of said premises. The complainants insist that respondent holds said legal title, as to the undivided half of said lot, in trust for them; and on the other hand, respondent claims that their right to said property was entirely divested by the sale made in pursuance of the order of the Probate Court aforesaid. The only question made is, whether the said probate proceedings, so far identify and describe said lot, as to pass the interest of said decedent to the purchaser.

The inventory, notice of sale, and the return made by the executors of such sale, describe the property as "No. 7, town lot 72, on Main street, in the city of Dubuque, the undivided half of said lot, the whole being owned by Lawrence Malony and David Sleator." The appraisement describes it as "No. 7, half of city lot No. 72," and values it at $1,500. The petition for the sale, prays for an order to sell all the real estate, (which is shown to embrace various parcels,)

and among others, the "undivided half of lot 72, in the city and town of Dubuque." The fact of said application to sell is entered on the probate record, the material parts of said entry being as follows : " this day personally appeared Lawrence Malony and Herman Chaderich, and presented a petition praying for license to sell all the real estate of their testator," &c. ; " the lands described in said petition being as follows," (describing other parcels,) and " the undivided half of lot 72, in the city of Dubuque ;" and then follows the usual order for notice by publication. Proof of publication having been made, an order was entered authorizing the executors " to sell the whole of said real estate in the inventory thereof specified." The deed to Wilson describes the premises as " the undivided half of lot No. 73, as designated on the government plat of said city of Dubuque," and his deed to respondent contains the same description. In a subsequent report of the condition of the estate, the executors charge themselves with the sum of $1,112, for " the undivided half of lot 72." A final settlement was made of said estate in 1851, at which time the complainants were present, either personally or by attorney, and " admitted the correctness of the account," and they were then paid the amount ascertained to be due each by the terms of the will. About this time, it is also shown that the attorney for some of the claimants, examined the lot, talked about it with the judge of probate, and understood lot 73 to be the one that was sold. At the sale, the bidders all understood that they were bidding on lot 73, the same being situated on the southwest corner of Main and Third streets, in said city of Dubuque. Lot 72 is in another block, and was never owned by Malony and Sleator, or either of them, but has always been known and recognized as the property of other and different persons. Lot 73 has, on the contrary, been known for a number of years as belonging to Malony and Sleator. Upon this state of facts, the decree below was in favor of respondent, from which the complainants appeal.

*Hand & Covell*, for the appellants.

*Smith, McKinlay & Poor*, for the appellee.

WOODWARD, J.—The argument of appellants has, for the most part, been based upon the hypothesis, that respondent, to support his title, is required to contradict the records of the Probate Court, connected with the sale of this lot. If his title cannot be otherwise supported, we are clear that it must fail. That record must give its own history, and cannot be explained, varied, or contradicted by parol evidence. If, as it stands, the proceedings are sufficiently regular to pass the title, and to give the respondent the equitable, as well as the legal, right to this lot, the decree below must be affirmed, otherwise not. It will be observed, that the inventory, notice, order of sale, and the return thereof, all describe the property as " town lot 72, on Main street, in the city of Dubuque, the undivided half of said lot, the whole being owned by Lawrence Malony, and David Sleator." We assume that the order of sale so describes it, for it gives authority to sell all the real estate in the inventory specified, and thus adopts the description therein contained. The petition asks for license to sell all the real estate, and when it comes to the description, speaks of " the undivided half of lot 72, in the city of Dubuque ;" and this description is substantively followed in the appraisement and other entries, except that the appraisement designates it as parcel No. 7, the same number as in the inventory.

The question presented is, whether these proceedings may be sustained by the rule, that a false or mistaken description shall not vitiate. *Falsa demonstratio non nocet.* It is manifest, that when we come to apply this record to the subject matter, the description used is true in part, but not true in every particular. Malony and Sleator never owned lot 72, but they did 73. Are we justified, then, in rejecting the number 72, as being false, and upholding the proceedings; upon the ground that a sufficient description will still remain to ascertain their application ? Or, to change the

phraseology of the proposition, shall the respondent be deprived of this property, because the lot, otherwise accurately and correctly described, has been misnamed and called lot 72, instead of lot 73? This is the state of the case as presented to us, upon strictly legal grounds; and it is very probable, that the defendant's claim might be sustained, upon even this merely legal view of the matter, by rejecting that part of the description which is *falsa demonstratio.*

A brief reference to a few general rules and well-considered cases, will, we think, show how the argument would stand under that view. If a conveyance be so uncertain in its description, that it cannot be known what estate was intended, the conveyance will be void. If the description includes several particulars, all of which are necessary to ascertain the estate to be conveyed, none will pass, except such as corresponds with every particular of the description. But, if "there are certain particulars, once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant." There must be a reasonable construction of the language used, and the identity of the land, ascertained from the entire description. If there shall, in the instrument, be a repugnant call, which by the other descriptive terms, clearly appears to have been made through mistake, the conveyance is not void by reason of such repugnant call. And, finally, when the instrument is applied to its subject matter, if it be found that the description in it, is true in part, but not true in every particular, so much of it as is false, is to be rejected, and it will take effect, if sufficient remains to ascertain its application. These general rules are fully recognized by the following, as well as other, authorities: 1 Greenleaf Ev. § 301; *Worthington* v. *Hylyer*, 4 Vir. 205; *Jackson* v. *Clark*, 7 Johns. 218; *Jackson* v. *Williams*, 17 Johns. 156; *Jackson* v. *Marsh*, 6 Cow. 284; *Lash* v. *Deuse*, 4 Wend. 319; *Loomis* v. *Jackson*, 19 Johns. 449; *Cleavland* v. *Smith*, 2 Story, 291; *Boardman* v. *Reed et al.*, 6 Pet. 328; *Jackson* v. *Sprague*, 1 Paine, 494; *Vase* v.

*Handy*, 2 Greenl. 322 ; 4 Cruise Dig. tit. 32, ch. 21, § 31, and note.

But there is a higher, broader, and more satisfactory ground, upon which the cause truly stands. Let us look away from the papers, and from the verbal description, a moment, and regard the matters of fact, the transactions *in pais*. The true lot was offered for sale, the sale took place upon it, the bidders saw it, they bid upon it at the spot, they knew the lot really intended, and bid upon it accordingly ; they bid upon the lot they intended to bid upon and to buy, but the number in the papers was wrong—it was a mistake. Thus, Wilson bid upon the lot intended to be sold, and the one he intended to buy. Add the further fact, that in April, 1851, a settlement was made of the estate, at which time the complainants were present, either personally or by attorney, and admitted the correctness of the account, and they were paid the amount ascertained to be due each, by the terms of the will. Under these facts, the case stands thus in legal proposition : The complainants claim the lot, in equity. Respondent answers, that he holds the legal title from the United States. Complainants reply that this is true, but that he obtained this legal title with a knowledge of their ancestor's, (or devisor's,) equitable interest. He rejoins that this was divested by the executor's sale. They rebut, by showing the mistake in the number ; in effect saying, that although it was intended to sell this lot, and although the bidders bid upon it, and although Wilson supposed he had bought this one, yet in the papers it was described by a wrong number. Now, how does a court of equity look upon this ? He that comes into equity, must come, not only with clean hands, but with a pure conscience. How do the equities stand between these parties ? Not even so equally balanced as their legal positions. In strict law, the complainants have the advantage of a mistake, but the respondent has the legal title from the source of title. And what equity does the complainant show, to take away that legal title? None whatever. When he asks the court to set aside the probate sale, it is upon strictly

legal ground, and then the respondent may well show his title. There is no equitable principle upon which complainant asks to set aside that sale. The equity is all on the other side; consisting in the intent on the one side to sell, and on the other side to buy, the true lot, and the one which was in reality sold and bought. The mistake does not appear to have misled, or in any manner prejudiced any one. It was hidden in the papers, whilst the outside transaction was correct, true, *bona fide*, and well understood.

It is worthy of note, that the complainants do not offer to restore to respondent, or to his grantor, the money which either of them paid, a part of which has been received by complainants, and the remainder applied to the payment of their devisor's debts. But in the view taken, no weight is given to this fact. We do not think this a cause presenting an equity which can prevail to set aside the legal title, acquired from the government; and the court must, therefore, refuse to interfere in behalf of the complainant.

The decree of the District Court is affirmed.