By the Court. Slosson, J.
The contract was, in itself, a good executory contract for the sale and delivery, by the defendant, of the article in question.
A party may, lawfully, contract to deliver at a future day goods of which he has not at the time, possession, (Stanton v. Small, 3 Sandf. R. 230.)
The question, in the present case, arises under the averments in the answer, “that it was not the intention of the defendant to make any actual sale or delivery of pork to the plaintiff, nor was it the intention of the plaintiff, actually, to buy or receive any pork from the defendant; that it was the mutual design of both the plaintiff and the defendant, at the making of the said supposed contracts, that the same should not be specifically performed, in whole or in part; but, on the contrary, that, at the maturity of said supposed contracts, the differences between the then market value of the pork therein mentioned, and the price of the same fixed in said supposed contracts, should be paid by the-one party to the other, as performance or satisfaction of said supposed contracts.”
The answer then avers, that the market price of pork in the *210 then future month of September, (the period fixed in the contract for the delivery of the pork,) “being an unknown and contingent event, and a chance,” the contract was a mere wager on the future market price, and on the chance of such a future price, and a gambling transaction, contrary to the statute, and void.
The plaintiff contends, that this was a speculative contract merely, and not in the nature of a wager; and neither within the letter nor the intent of the Statute against Betting and Gaming. That the contract, on its face, contains nothing contrary to the statute, and being in writing, cannot be varied or contradicted by parol evidence of an intent, which would go to show that it was never to be performed, and that therefore the allegation of such an intent is not good in pleading, and does not raise the question of wager at all; and he further contends, that, even if this objection is not fatal,,the answer is defective, in not alleging, that the transaction was entered into with intent to evade the statute.
The rule which excludes parol evidence to contradict or vary the terms of a written instrument, applies to the construction of it only as a valid subsisting contract: but a party might always show that the instrument was void, either by reason of fraud, want of consideration, or as contravening a statute, or some express rule of the common law, or as against public policy, and for other reasons.
So infancy, coverture, or insanity may, when pleaded, be shown by parol, to avoid a written agreement.
That the answer should have alleged that the contract was entered into with intent to evade the statute, cannot be necessary, if the intent was, to do what the statute forbids, and such intent is sufficiently averred.
When the intent is to do what the statute prohibits, the adoption of a form of contract which is good on its face, necessarily shows an intent to evade the statute.
We think the averment of intent, in the present case, alleged distinctly to be that of both parties, and mutual, is sufficiently made. It is an averment of a material fact, and, therefore, admitted by the demurrer.
The question, then, is, whether the agreement thus read is *211 within the statute against gaming, &c., and void. The Court of Common Pleas in England, in Grizewood v. Blane, 20 Eng. L. and Eq. R. 290, held, that a contract for the sale and delivery of certain railway shares, at a certain price, on a future day, was, on the finding of the jury, that it was the intention of neither party actually to buy or sell, a gambling transaction, within the statute, 8 and 9 Vict. ch. 109; by which it is enacted that “ all contracts or agreements, whether by parol or in writing, by way of gaming or wagering, shall be null and void.”
Williams Justice said “there was ample evidence of a mutual understanding between the plaintiff and defendant that the contract of sale was colorable only, and if so, the transaction was avoided by the statute.”
The whole case turned on the question of the intention of the parties, as a question of fact, and the case, at the trial, was put to the jury distinctly upon that issue. Apart from that, the contract could not, it would seem, have been impeached.
In the case at bar, the intention, as admitted by the demurrer, is of equal force in its bearing upon the question in controversy, as would be a verdict on the point.
It was contended on the argument that the words in the English statute “ by way of wager,” give a broader application to it, than our own statute possesses; but to this I do not agree, nor do I see how the case of Grizewood v. Blane could have been otherwise decided, had the language of that statute been identical with our own.
The language of our own statute is fully as comprehensive, if not more so, than that of the English. It is, that, “ all wagers, bets, or stakes made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful,” and “all contracts for or on account of any money, or property, or thing in action, so wagered, bet, or staked, shall be void.”
It is much broader than our former statute, entitled “ An Act to prevent horseracing:" 1 R. Laws 223, § 5. In respect to this former statute, Justice Van Ness, in Bunn v. Riker, 4 J. R. 426, expressed his wish that, the Court had been prepared to decide that that statute had made all wagers illegal. In that case, however, it was not necessary to decide upon the construction of the *212 statute, as it was one of betting on the result of an election, which was held void at common law.
A wager is something hazarded on the issue of some uncertain event. A bet is a wager, though a wager is not necessarily a bet.
The statute was, evidently, intended to prohibit all that, class of agreements by which money was to be lost or won, according to the event of a mere future contingency; not hazards of buying or selling in ordinary trade in reference to a supposed future condition of the market, and by the result of which money might be lost or realized; but the putting at hazard, either a certain sum ascertained; as in the case of a bet, or a sum to be determined as to its amount by the event on which its loss or gain is to depend; as in the case of an agreement to pay mere differences. The sole inducement to such an agreement, is the hope of winning that sum in the turn of the wheel of chance. It has no respect to trade, other than as an element entering into the combinations which are to affect the event, neither has it any respect to the exercise of that honest judgment in respect to the future, and that wholesome industry in the pursuit of one’s lawful business, which it is the policy of the law to encourage; but it is simply and purely a betting or staking of money on the event of a mere uncertainty, and has all the elements of a pure game of chance. Such agreements are fraught with all the evils against which the statute in question was intended to guard, and when the Court perceives that the real nature of the transaction, however unobjectionable in the form in which the parties may have seen fit to clothe it, is to do that which comes within the prohibition of the statute, it will, and as long as the statute stands on-our books, ought to look beyond the letter of the contract and refuse its aid to its enforcement.
That the statute in question was thought, by the Legislature which enacted it, comprehensive enough to embrace all contracts in which the gain or loss was intended to be dependent on an uncertainty, is evident from § 10, which, expressly, excepts from its operation, contracts of insurance, when made in good faith, and for the security or indemnity of the party insured.
A wager policy, or a policy in which the insured has no interest, and which is in effect a mere betting on the chances *213 of a ship’s safe arrival, was, before this statute, held to be a valid contract; but the Legislature, apprehensive that the generality of the terms used in § 8, might embrace honest transactions of insurance, as well as those which were of a mere gambling description, expressly provided as above, by § 10, that insurances which were of a bona fide character, and intended as actual contracts of indemnity, should not be affected by the statute.
It is said the present transaction is analogous to that of buying and selling stocks, of which the vendor has not the possession or title, &c., and that, as the Legislature has expressly forbidden the latter, it is to be presumed, that transactions like this, were not intended to be prohibited by the act against gaming.
This maybe a true inference, so far as the contract of sale and purchase, expressed by the agreement, is concerned. On its face the contract is valid, and not within the statute. There is no statute forbidding the buying or selling of property (other than stocks) at a future time, merely because the party has not the possession or ownership of it at the time; but it does not follow that, when the contract assumes the character of a wager, it does not fall within the prohibition of the statute.
It may be said that § 7 of the Stock Jobbing Act, which expressly declares that wagers concerning the present or future price of stocks, shall be void, was useless, if section 8, of the Gaming Act, was as broad in its meaning as I contend for.
To this, it is an answer to say that, in the Stock Jobbing Act, the Legislature was dealing with a single distinct mischief, and not only making void, contracts in respect to this species of property, which it did not intend to avoid in respect to any other, but providing by way of remedy, that any money paid by way of premium or difference in respect to such contract," or in pursuance of a wager, as to the present or future price of. stocks, might be recovered back. There was a propriety, therefore, in making a special enactment as to such wagers; and the Legislature may well have supposed, that in respect to all others, they were already sufficiently prohibited by section 8 of the Gaming Act.
It is impossible to read the present transaction in the light, of this answer, other than as a contract to stake a certain sum, to be ascertained by the event, on the chance of an unknown contingent event—that it had no respect to trade—that it is of the *214 precise character with that of a betting on an election, or on any other uncertain event—that it is fraught with the very mischief which the Statute was intended to extirpate, and is, therefore, within its spirit and meaning—that it is in effect a wager, and, therefore, void.
Judgment at Special Term affirmed.