### JEROME A. OSBORNE, Respondent, *v.* GILES ROBBINS and STERLING ROBBINS, Appellants.

*Note obtained by Duress procured by charge of Rape—In Action on, what Defendant may prove.*

In an action upon a promissory note it is proper for the Defendant to set up in his answer, and prove on trial, that the note was obtained from him by duress imposed upon him by arrest in an alleged criminal proceeding for a pretended rape committed upon the person of one of the payees of the note.

It is also competent for the Defendant to prove a settlement of the alleged civil damages for the purpose of proving that the note was given to settle a criminal prosecution. The Defendant may also prove a combination against him to extort from him such note, and to that end may prove the falsity of the alleged charge of rape.

APPEAL from the Supreme Court.—The action was on a note made by the Defendants on the 13th of January, 1860, for the sum of $500, payable, with interest, to Burrill Rice and Esther Jane Rice, or bearer, one year from date. The defence was that the note was made without legal consideration, and was obtained by extortion and fraud, to procure the liberation of the Defendant Sterling Robbins, who was under duress as a prisoner, upon a charge of felony, preferred by the payees of the note; that the charge was false; that the claim, which was made the pretext for extorting the note, had been previously settled; that the Plaintiff combined with them in the wrong, and subsequently received the note, without paying value therefor, and with notice of the facts impeaching its validity. The cause was tried at the Herkimer Circuit. The judge excluded the *direct* evidence offered by the Defendants in support of the most material of the foregoing allegations, viz.: that the claim for which the note was colorably exacted had been previously settled; that the charge of felony was unfounded; and that the note was in fact executed to procure the liberation of the prisoner. This evidence being excluded, the jury found a verdict for the Plaintiff. Other facts were proved by the Defendants, a statement of which is essential

to an intelligent determination of the question whether there was error in excluding the additional evidence proposed. Sterling Robbins, who is the son of the other Defendant, was a farmer, residing in the town of Schuyler. He had no family, and Rice and his wife lived with him, as hired man and woman, from August, 1859, until the 13th of January, 1860, when the arrest was made, twelve days after the rape was alleged to have been committed, and nine days before the marriage of Sterling to his present wife, with respect to whom he had been charged with undue intimacy. On the 1st of January, Rice went away, leaving his wife and Robbins the only inmates of the house; and he did not return until the 3d of January. On the 4th of January, in consequence of something alleged to have occurred during his absence, a settlement was made between him and his wife and Robbins. The Court excluded evidence that what she alleged did not in fact occur, and also excluded proof of the terms and subject of actual settlement: but it appeared by the admission of the Plaintiff and Rice, when they were together, that there was such a settlement; that the sum agreed upon was fifty dollars; that Robbins had paid five dollars down, and had agreed to pay the other forty-five dollars when he sold his oats. On Thursday, the 11th of January, the Plaintiff had an interview with Rice and Pierce, in the presence of the witness Parkhurst, and told him " to take Sterling up : he would not wait twelve hours before he would take him up. Rice said he had settled with Sterling, and Sterling had agreed to give him fifty dollars, and had paid him five dollars down. Osborne said he did not think that would make any difference ; he should take him up any way. Some one of the parties spoke about getting $500 ; cannot say who ; some one said he might have had $500 as well as fifty dollars. Osborne told him to take him for committing a rape. On the Friday after this, they had Sterling taken, and came back from Herkimer. I came out of the Plaintiff Osborne's house, and Plaintiff said : ' Burrill has settled with Giles and Sterling, and got their note for $500, and they have both signed it.' " In regard to their statement of the terms of the original settlement,

the witness said: "He settled for fifty dollars, and paid five dollars, and the rest was to be paid when Sterling sold his oats; nothing was said about suing Sterling; but he said, take him with a warrant." In accordance with the Plaintiff's suggestion, a warrant was obtained for the arrest of Sterling on the 13th of January, upon Mrs. Rice's oath that on the 1st day of that month he feloniously ravished and carnally knew her. He was arrested the same day, at his residence, by a constable, who took him in irons to Herkimer, a distance of about twelve miles. The officer exacted a bonus for calling at the house of a brother, to send word to the father that his son was a prisoner. He was taken before the magistrate, and Rice and his wife soon afterward made their appearance. Robbins asked them what this meant. Rice said he had been advised by his friends not to settle for less than $500. The prisoner asked him if Osborne (the Plaintiff) was one of those friends, and Rice said he would not tell. Robbins told him he was alone; that he did not know what to do, and that his folks had not come. He asked Rice if he would take $400. He said he would not agree to it until he had seen his counsel. He said he would go and see his counsel. He was willing to take $400, but went out, and on his return said he could not take it. Rice's counsel then came in and said the best way was to go to his office; there were too many at that of the justice. The magistrate assented, and they went together to the office of the Complainant's counsel. This was about seven o'clock in the evening. The counsel then said, if all was ready, they would go on with the suit. Robbins told them he was then alone, that he had no counsel, and did not know what to do. They said there was a man at the railroad he could get, but did not tell his name. The prisoner renewed his offer to Rice of $400. The latter whispered to his counsel, who shook his head, and he again refused to take less than $500. The prisoner said then he would have to give them a mortgage. The counsel went for a blank mortgage, but the proceedings were here interrupted by the arrival of Giles Robbins, the prisoner's father. As soon as he had learned from his son what he was arrested for, he requested Rice to step into

the hall with him, and asked him what he did this for. Rice replied that he was advised to do so by his friends; that he had settled with Sterling for fifty dollars, but that his friends told him he should not settle so; that he could have $500 as well as fifty dollars. The constable came out into the hall and ordered them in, telling them they could not stay there and talk. After their return to the counsel's room, the justice said the suit must go right on. The father asked the privilege of giving bail. The counsel told them they could not take bail, unless the prisoner admitted the crime. The prisoner told them it was not so, and he should not admit it. Either the counsel or the justice then read to him from the Revised Statutes the penalty for the crime of rape, and told him that it was next to murder; and that he would have to go to State's prison for ten years, and probably more, and that the criminal matter could not be settled. The prisoner asked again if he could not give bail for the next day. They told him he could not; that he must go to jail if the suit did not come on. He said then he would go to jail. Rice then said if it was not settled that night it could not be settled at all; that he would settle for $500. No civil suit had been brought, either before or after the fifty-dollar settlement, and none was threatened or proposed. Rice said he had come down to sue the prisoner, but his counsel told him that he could not sue. The father and son then conferred together. Either the justice or the lawyer remarked that the damages could be settled for $500, and at about ten o'clock at night the attorney drew up the note in suit, and the Defendants signed it and delivered it to the Complainants. An ostensible release was also drawn up by the lawyer, signed by the payees of the note, and witnessed by the constable. Rice and his wife went into the other room, where they were joined by the counsel and constable, and had a laughing and jovial conversation. Three other men came out from the back room with them. There was evidence showing that the Plaintiff's brother was in the attorney's back room after the arrest, taking part in the conferences, and evidence tending to show that the Plaintiff was there also, though he denied that he was there in reference to

this complaint. When the party came out of the back room, the magistrate having in the mean time disappeared, the accused followed Rice and his wife down-stairs, and conversed with them as to the giving of the note and the transactions which had just occurred. This conversation the judge excluded on the ground that, though Robbins was still a prisoner, what was said was not a part of the res gestæ. They went across the way to the tavern, and the constable called the prisoner aside, and consulted him as to what he should do with him. He told him he did not know as he could let him go, and wanted him to give bail. The old gentleman said he could have no bail unless they gave up the note. The constable then referred the matter to the attorney, who told him no bail was required, and the prisoner was accordingly released by the officer. The constable, who was sworn for the Plaintiff at a later stage of the trial, testified that the attorney told him he could hold him on it, or he could let him go, and that would be the end of it; and in this respect he was subsequently contradicted by the attorney. When the proceedings terminated it was after ten o'clock in the evening, but the Plaintiff, Osborne, learned them from Rice the same night; and when he reached his own home, which was some eight or nine miles from the justice's office, he communicated the intelligence to Parkhurst before he went into the house. The various offers of evidence on the part of the Defendants having been excluded, the Plaintiff introduced testimony tending to corroborate that of the Defendants on most of the material facts, but contradicting it in some of the details. The counsel for the prosecutors testified in substance, among other things, that Rice, the justice, and himself, all notified the prisoner that it would be unlawful to settle the criminal proceedings, but lawful to settle the damages; that he drew up the papers accordingly, and publicly explained the distinction; and that though the justice went away before the matter was disposed of, he left behind him a mittimus to keep the prisoner in jail over night. The justice was also sworn, and explained that he transferred the proceedings from his own office, which was a public place, to that of the counsel for the prosecu-

tion, because the counsel so requested; that he heard Rice say nothing, except that he claimed $500; that the statute against compounding felonies was read, as well as the statute for the punishment of rape; that notice was repeatedly given that the offence could not be settled, but the damages could; that though he left before the close of the proceedings, he handed a mittimus to the officer; that he heard the next morning that they had settled it, and that the prisoner had gone home; that after the settlement he never had anything else to do with it; that it was dropped there, and that he got his fees for his services from the county, and nothing from anybody else. The constable testified in substance, among other things, that he held also the office of deputy-sheriff; that he handcuffed the prisoner for two reasons— one, that on a previous occasion he had broken his word, and the other, that his horse would not stand without being held; that he did not interfere to prevent the prisoner's father and Rice from talking in the hall; that he did not let Robbins go until he was told that he could do so by Rice's attorney; and that the bonus exacted from the prisoner for calling at his brother's on the way, was not credited to the county. The Plaintiff denied that he was at Herkimer on the 13th of January in reference to this complaint; he claimed not to have been notified of all the facts in relation to the note, and to have taken it in pay for a debt of $180, and to have given his note for the balance, payable, by its terms, when he collected the money of the Defendants on the note now in suit. The jury having found a verdict for the Plaintiff, an appeal was taken to the General Term in the Fifth District, when the judgment was affirmed, the prevailing opinion being delivered by Judge Allen, and a dissenting opinion by Judge Morgan. The case is reported in 37 Barbour, 481.

*Waterman & Hunt* for Appellant.

*Francis Kernan* for Respondent.

PORTER, J.—The Plaintiff's right of recovery depends on the validity of the note in the hands of Rice and wife, the payees. He cannot claim the protection which the law extends to the bonâ

fide holder of negotiable paper. He did not part with value on the faith of its validity; he had notice of the facts tending to impeach it, and he instigated the process of coercion through which it was obtained.

The note was executed when the principal Defendant was a prisoner; and it could not be enforced by the payees if they obtained it through an abuse of legal process, for purposes of oppression and exaction. When a party is arrested without just cause, and from motives which the law does not sanction, any contract into which he may enter with the authors of the wrong, to procure his liberation from restraint, is imputed to illegal duress. It is corrupt in its origin, and the wrong-doer can take no benefit from its execution (Strong v. Grannis, 26 Barbour, 122; Edie v. Slimmon, 26 New York, 9; Richardson v. Duncan, 3 New Hampshire, 508; Severance v. Kimball, 8 id. 386; Watkins v. Baird, 6 Mass. 510; Cumming v. Ince, 11 Adolph and Ell. N. S. 112, 119; Richards v. Vanderpoel, 1 Daly, 71, 75, 76; Foshay v. Ferguson, 5 Hill, 154). In such a case the element of voluntary assent is wanting. The parties do not meet on equal terms. The authority of the Courts is perverted to unworthy uses. The instrumentalities employed to produce a consenting will are force and fraud, agencies which the law abhors. The prisoner is at the mercy of the accuser, and he submits to extortion as the means of deliverance from oppression under the forms of law.

The party who exacts a security from one whom he wrongfully restrains of his liberty can derive no aid from the fact that the claim which he enforced by illegal means was just. He cannot be permitted to allege the outstanding obligation of another as a justification of his own fraudulent act in deliberate violation of law. In all such cases, it is the simple duty of the Courts to condemn the contract; and the parties are thus remitted to their antecedent rights (Richards v. Vanderpoel, 1 Daly, 71; Strong v. Grannis, 26 Barbour, 122; Foshay v. Ferguson, 5 Hill, 154; Cumming v. Ince, 63 Eng. Comm. Law, 119; Eadie v. Slimmon, 26 New York, 9).

Opinion by PORTER, J.

The defence that the note in question was executed under duress was available to the father as well as the son (1 Rolle's Abr. 687 ; McClintock *v.* Cummins, 3 McLean, 158 ; 3 Bacon's Abr. 254, Duress, b ; 3 Chitty's Comm. Law, 56 ; Strong *v.* Grannis, 26 Barbour, 122).

The rulings on the trial seem to have been made on the same mistaken theory upon which the Complainants and their counsel acted in the proceedings before the magistrate.

The parties concerned in the prosecution appear to have assumed that any security they might exact from the prisoner could be enforced, if they could steer clear of the statute prohibiting the compounding of felonies. The transfer of the hearing from a public to a private office, the unusual proceeding of reading that statute to the accused on an examination for a different offence, and the repeated declaration of the Complainant, the counsel, and the justice, that the offence could not be settled, but the damages could, indicate very clearly their view of the danger to be avoided. They seem to have been unmindful of the fact that the occasion was inappropriate for the settlement of private differences between the Defendant and the witnesses for the prosecution, and to have overlooked the circumstance that, in negotiating a contract with the prisoner, they were dealing with one in vinculis. They misapprehended the law, even upon their own theory. If there had been proof at the Circuit that the Defendant had in fact committed the felony with which he was charged, the public reading of the statute, and the formal notice that it was illegal to compound a crime, would have been ineffectual to conceal the actual purpose of the arrangement. In the case of Cost *v.* Phillips, cited by Judge Brady in Richards *v.* Vanderpoel, it appeared that the Defendant had been arrested and taken before a magistrate on a charge of embezzlement, and that he there united with Sparks, his father-in-law, in executing a bond to the Complainants for the amount of the moneys embezzled. The attorney for the prosecutors, in that instance, as in this, told the Defendants that they were not to consider there was any agreement that the Plaintiffs should forego the prosecution. Lord Abinger, how-

ever, instructed the jury "that the Plaintiff's attorney saying, when the bond was executed, that it was not to be considered as an agreement not to press the prosecution, did not alter the nature of the transaction. The question was, what the parties intended. If the jury believed that the Plaintiff meant, upon getting the bond, to forego the prosecution against Phillips, and that Sparks signed under that belief and expectation, the consideration of the bond was illegal, and the jury ought to find a verdict for the defendants" (1 Daly, 75; 1 Bosworth, 210).

Such would have been the rule applicable to the case, if the Defendant had been guilty of the felony. But the rule of the common law for the protection of the innocent against duress and extortion is as rigid as the statutory provision for the protection of the conceded felon. There was no proof at the Circuit to justify the imputation of felony. The Plaintiff did not call Mrs. Rice; and her affidavit, introduced for a collateral purpose, was not competent evidence of the facts it purported to allege. There was, however, proof tending to show either that the Defendant had availed himself of the opportunities furnished by Rice for illicit intercourse with his wife, or that he was willing to pay fifty dollars to avoid the scandal and peril of a false accusation. The allegation of Mrs. Rice that he carnally knew her, may possibly be true, though her subsequent conduct, and that of her husband, leave the question by no means free from doubt; but the pretence that he "violently and feloniously ravished" her is inconsistent with all the circumstances disclosed on the trial. The alleged date of the occurrence was the 1st of January. Her husband returned on the 3d. On the following day the subject-matter of her complaint, whatever it was, was settled for five dollars, and the promise to pay forty-five dollars more. It was not of so serious a character as to prevent her from living alone with the Defendant in the mean time, during the absence of her husband, or to prevent them both from living with him for more than a week afterward, and down to the time when the Plaintiff and others instigated the project of compelling him to pay five hundred dollars more, by arresting him on a warrant for felony. The apolo-

getic tone of Rice and his wife, in their interviews with the son and the father on the night of the examination, are equally inconsistent with the theory of guilt; and their merriment. over the successful result of· the charge of felony, to which the Plaintiff advised them, is quite significant as to the good faith of the accusation.

But it was the right of the Defendants to prove, as matter of fact, that the charge was false.. They did not defend on the ground that the note was made to compound a felony.   They alleged in their answer, and claimed the right to prove, on the trial, that it was extorted from them to liberate the Defendant, Sterling Robbins, from imprisonment, under an unfounded charge preferred against him by the parties who extorted it.   If this was true it was a case of illegal duress, and the note was void.   The evidence that the charge was unfounded was excluded by the Judge.   It was relevant to a vital issue, and its rejection was clearly erroneous.   The ground on which the General Term sustained this ruling, as appears by the prevailing opinion annexed to the case, was, "that the answer did not allege that the charge was *unfounded*, and it was not, therefore, within any issue made by the pleadings."   This was a misapprehension.   We have referred to the answer, and find that the fact is there specifically alleged. . A different reading of the opinion appears in the published report of the case.   The ground there stated is, "that the answer did not allege that the charge was *compounded*" (37 Barbour, 484).   If that be the correct version, it is plain that the entire scope of the answer was misapprehended.. The pleading is drawn with great precision and perspicuity, and it contains the precise allegation, the proof of which was rejected.   The averment was appropriate to the defence of duress, and would have been inappropriate in an answer alleging the compounding of a felony.

We are also of opinion that the learned judge erred in rejecting the proof offered by the Defendants, that the note was given to procure the release of the accused from imprisonment on the criminal charge.   The purpose for which it was executed was a matter of fact, within the knowledge of the witness, and

as to which he was competent to testify (McKown *v.* Hunter 30 New York, 628, 629; Bell *v.* Shibley, 33 Barbour, 613; Cassard *v.* Hinman, 1 Bosworth, 207). The Defendants should have been permitted to prove the subject-matter and terms of the settlement, made on the 4th of January, between the principal Defendant and the payees of the note in suit. It is not necessary to decide the question whether the agreement of compromise then concluded would be binding as an accord and satisfaction, in the nature of an account stated, in respect to indefinite and unliquidated damages; though that view of the law seems to be supported by most of the recent authorities (Cool *v.* Stone, 4 Iowa, 219; McDaniels *v.* Lapham, 21 Vermont, 222; Babcock *v.* Hawkins, 23 id. 561; Merriam *v.* Leonard, 6 Cushing, 150–153, per Shaw, Ch.J.; Stockton *v.* Frey, 4 Gill, 424; Woodward *v.* Miles, 4 Foster, 294; Billings *v.* Vanderbeck, 23 Barbour, 546; Crans *v.* Hunter, 28 New York, 389). It is sufficient to say that the proposed proof was appropriate, in connection with the advice of Rice's counsel, that he could not sue the Defendant for private damages.

It was relevant and material to the inquiry whether the claim of five hundred dollars for the same matter was made in good faith, or whether it was resorted to as a mere pretext to cover the illegal exaction.

The judgment should be reversed, and a new trial should be ordered.


PARKER, J.—This action is upon a promissory note for $500, made by the Defendants on the 13th day of January, 1860, payable one year from date to Burrill Rice and Esther Jane Rice, or bearer, and transferred by them to the Plaintiff. The defence set up is, that the note was obtained by extortion, duress, and fraud, and was given for an unlawful consideration, the settlement of criminal proceedings instituted for an alleged rape by the Defendant, Sterling Robbins, upon the said Esther Jane Rice; and that the Plaintiff received the note, without the payment of value therefor, and with notice of the consideration, and the circum-

stances under which it was given. The action was tried at the
Circuit, by the Court and a jury, and resulted in a verdict for the
Plaintiff for the amount of the note.

: . The case shows that Sterling Robbins, one of the makers of
the note, was complained of before a magistrate, at the instance
of the Plaintiff, by Esther Jane Rice, the wife of Burrill Rice,
the payees of the note, for a rape upon her, and was, therefore,
arrested upon criminal proof and taken before the magistrate, and
detained until he gave the note in question, with Giles Robbins,
his father, as his surety, and then was suffered to go at large ; and
that no further criminal proceedings have been had against him,
though evidence was given tending to show that the note was
given for the civil damages to the payees, and not as a settlement
of the criminal complaint; also that the Plaintiff, when he took
the note, was cognizant of the consideration, and of the circum-
stances under which it was given. After such evidence was given
the Defendants offered to show that on the 4th of January, 1860,
an agreement was made between Burrill Rice and Defendant,
Sterling Robbins, by which Rice settled with Robbins for the
damages which he had sustained from the alleged rape by Rob-
bins upon his wife, Robbins agreeing to pay him fifty dollars in full
thereof, five dollars of which he paid down, and the residue he was
to pay when he should have threshed his oats. This was objected
to by the Plaintiff as incompetent and immaterial, and excluded
by the Court.

There is one view in which I think this evidence was competent.
One line of defence was that the note was given in settlement of the
criminal charge, and any evidence tending to show that fact was ad-
missible. Now, if it could have been shown that Rice had already
settled the claim for civil damages arising out of the alleged rape for
fifty dollars, part of which had been paid, it tended to show that this
note for $500 was not given in settlement of those damages, but really
in settlement of the criminal charge as alleged in the answer. The
Defendants, therefore, were entitled to put that fact before the jury,
by the testimony of the witness by whom they offered to prove it,

to be weighed with the other evidence which had already been given tending to the same result.

The Defendants also offered to prove the falsity of the charge of rape, and that it was part of a plan or combination to extort money on the note in suit from the Defendants. This was objected to and excluded. I think this offer of the Defendants was clearly admissible. If the Defendants could have shown that the payees of the note combined to extort money from the Defendants by a false charge of rape against the Defendant, Sterling Robbins, and thereby procured the note to be given, it was within the line of defence marked out by the answer, and in its character competent and material as a defence to the note in the hands of the payees, or of any person who received it with notice of such facts.

The Defendants having excepted to the exclusion of the evidence above referred to, it follows, if I am right in the view above taken, that they are entitled to a new trial.

I am of the opinion, therefore, that the judgment should be reversed, and a new trial granted.

All the Judges concurred in the foregoing opinions except Grover, J., who concurred in the result, and Hunt, J., who took no part in the case.

Reversed.