90        1
24 SC  ¹1

## Griffith et al. *versus* Sitgreaves.

1. Where a case is submitted to the court, under the Reference Law of April 22d 1874, the Supreme Court, on a writ of error, will hear and determine only questions of law arising upon bills of exceptions to the rulings of the judge, relating to the evidence or the law of the case, and will not go behind the findings of fact, except where in a common-law trial before a jury, the assignments of error are such as can be heard and determined before this court. Jamison *v.* Collins, 2 Norris 359, followed.

2. Under such a submission, the court found that certain notes in controversy were signed and delivered by the maker to the holders, while the maker was under duress of imprisonment, and duress *per minas* by reason of threats and acts done by one of the holders. It was contended that this finding should be reversed, on the ground that the question, whether the notes were given under the pressure of duress or not, was a question of law upon the facts proved. *Held,* that the duress was a question of fact for the jury; that if this had been a common-law trial, it would have been error for the court to have withdrawn the question of duress from the jury, upon the ground that there was not sufficient evidence to submit to them, and the same rule must be applied where the facts are found by the court.

3. Where a promissory note was obtained by duress of the maker, and endorsed in good faith, without any knowledge of the duress on the part of the endorser, in a suit by the holder, who was guilty of the duress, against the endorser, the latter may set up the duress of the maker as a defence to the action.

April 4th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ. ·

Error to the Court of Common Pleas of *Northampton county:* Of January Term 1879.   No. 232.

Assumpsit by Matthew H. Griffith, James Roberts and J. Milton Butler, partners, trading as Griffith, Roberts & Butler, against Theodore R. Sitgreaves, to recover $2903.68, the amount of seven promissory notes, of which defendant was the accommodation endorser for Robert C. Pyle, the maker.   The defendant pleaded non-assumpsit.   A jury trial was dispensed with, and the case was submitted to the court, Meyers, P. J., under the provisions of the Reference Law of April 22d 1874.

The court, inter alia, found the following facts :

"That Robert C. Pyle, on the 9th of January 1874, at the Metropolitan Hotel, in the city of New York, signed as maker seven promissory notes, dated New York, January 9th 1874, payable to the order of Theodore R. Sitgreaves, at the First National Bank, Easton, Pa.; said notes being respectively for $316.12 at four months; $318.92 at five months; $642.42 at six months; $322.52 at seven months; $324.32 at eight months; $652.36 at nine months, and $327.92 at ten months.   That on the same day Pyle forwarded said notes by mail, enclosed in a letter addressed to

9 NORRIS—11

[Griffith *v.* Sitgreaves.]

Theodore R. Sitgreaves, Easton, Pa., defendant in this action, requesting him to endorse the same and return them to him by mail at said hotel. That on the 11th of January 1874, which was on Sunday, Pyle, while at said hotel, received by mail a letter from Sitgreaves inclosing said notes endorsed by him. That on the same day, viz.: January 11th 1874, Pyle delivered said notes to Matthew H. Griffith, one of the members of the firm of Griffith, Roberts & Butler, plaintiffs in this action. That the consideration of said notes was a then subsisting indebtedness of Pyle to said plaintiffs for a bill of ready-made clothing purchased by him in May 1873, or thereabouts. The said notes were duly protested at maturity."

" That at the time said notes were signed and delivered by said Pyle to Matthew H. Griffith, one of the plaintiffs, the said Pyle was under duress of imprisonment and duress *per minas*, by reason of acts done and threats made by said Griffith, and the general conduct of said Griffith, and one Thomas Wheeler, commencing in the forenoon of the 9th of January and terminating in the afternoon of the 11th of January 1874. That the said notes were signed and delivered as aforesaid, under and by reason of said duress. That there is no evidence in this case from which the court can find as a fact that Pyle after the making and delivery of said notes, agreed or promised to pay said notes, made any declarations or done any act by which he either waived the right or estopped himself or Sitgreaves to set up said duress as a defence in an action on said notes either against himself or Sitgreaves.

The court having found the fact that the notes were signed and delivered by Pyle to the plaintiffs under and by reason of duress of imprisonment and duress *per minas, held*, that the same were absolutely void as against Pyle as maker and Sitgreaves as endorser in the hands of a person who was a party to said duress, or of a holder who had notice thereof before he received said notes. And that in an action on said notes by the plaintiffs against Sitgreaves, it was competent for the latter to set up as a defence the duress of Pyle, and especially so where the fact was found as in this case, that the duress was effected through the agency of one of the plaintiffs in this action.

Exceptions were filed to this decision which the court overruled, when the plaintiffs took this writ, and, inter alia, made the following assignments of error:

5. The court erred in its answer to defendant's third point, which was as follows: The testimony establishing that duress, both of imprisonment and *per minas*, was exercised by Griffith upon Pyle in obtaining the notes in suit, the delivery of them to the plaintiffs under such circumstances conferred no title to them.

Ans. " Affirmed."

6. In finding that the notes were given under duress.

7. In not finding all the facts bearing upon the question of duress, and in not stating them "separately and distinctly."

8. In their answer to defendant's fourth point, which point was as follows: It is an abuse of legal process to make use of it for the purpose of coercing a person to enter into obligations or to part with property under apprehension of its use.

Ans. "Affirmed."

9. In their answer to defendant's fifth point, which point was as follows: If the notes in suit were void against Pyle by reason of duress exercised upon him, they created no obligation upon the part of Sitgreaves as endorser.

Ans. "Affirmed."

10. In finding that Sitgreaves can defend against the payment of the notes because of the duress practised upon Pyle.

11. In their answer to defendant's sixth point, which point was as follows: If the notes in suit were void for duress of Pyle there are no facts in the case which operate to re-create a legal obligation on his part to pay the notes.

Ans. "Affirmed."

12. In finding that Pyle would not be estopped by his conduct from setting up his alleged duress as a defence to the notes, and in finding that Sitgreaves is not likewise estopped by Pyle's conduct.

*W. W. Schuyler*, for plaintiffs in error.—Does the evidence make out a case of duress? The court below found as a question of fact that the notes in suit were obtained from Pyle by duress. We are aware of the decision of this court in Jamison v. Collins, 2 Norris 359, to the effect that this court "will not go behind the findings of facts" of the court below; but submit that the question as to whether the notes were given under the pressure of duress or not, is a question of law upon the facts proved.

If this case had been tried before a jury it would have been competent for the plaintiffs to put a point to the court that the evidence did not make out a case of duress, and a mistake on the part of the court in its answer to the point would undoubtedly have been error. We propose to argue this branch of the case as if the question of duress had been raised in that form, for a change of tribunal certainly makes no change in the character of the question to be decided.

Sitgreaves cannot take advantage of Pyle's alleged duress: Huscombe v. Standing, Cro. Jac. 187; Robinson v. Gould, 11 Cushing 55; Mantell v. Gibbs, 1 Brownlow 64; McClintick v. Cummings, 3 McLean 158; Thompson v. Lockwood, 15 Johns. 256; Steuben Co. Bank v. Mathewson, 5 Hill 249. In the cases of Osborne v. Robbins, 36 N. Y. 365; Strong v. Grannis & Brown,

[Griffith *v.* Sitgreaves.]

26 Barb. 122, and Fisher *v.* Shattuck, 17 Pick. 252, relied upon by the court below, the instruments sued upon were void and would have been so held without invoking the principle of duress.   In the present case the note was barred upon a valid consideration.

*H. Green,* for defendant in error.—The question of duress was merely a question of fact, and the finding of the court will not here be disturbed.   The action being upon an endorsement of Pyle's note, if that note was void on account of the duress of Pyle, the note itself being destroyed as the obligation of Pyle in the hands of these plaintiffs, there can be no liability on the part of Sitgreaves to pay it to them.   It is certainly not reconcilable with reason or law that in a case like the present, where the instrument sued on, being a promissory note endorsed by the defendant, was obtained by duress of the maker, and endorsed by the defendant in good faith without any knowledge of the duress that the payee, who was guilty of the duress, and is therefore not an innocent party, can recover against the endorser.

The contract of the principal debt or is void—the instrument as to him is a nullity.   In the hands of these plaintiffs it is absolutely discharged as to him.   Yet we are told these same plaintiffs may nevertheless compel the innocent endorser to pay this void obligation.   Thus the instrument being void as to the principal by the act of the holders, the surety or endorser after he has been compelled by the law to pay it, is unable to recover his money from the principal.   And if the law, out of regard to an ancient dogma, that the defence of duress is only available by him on whom the duress is practised should hold, in this enlightened day, that a recovery may be had in such circumstances, then it will result that if a band of cut-throats can capture the person of a citizen, and compel him through fear of his life to write a note and send it by mail to a friend and procure his endorsement of it, a recovery may be had on such endorsement by the criminal to whom it was given.

The cases cited by plaintiffs in error are clearly distinguishable from this, and on the mere question of authority we append the following: Strong *v.* Grannis, *supra ;* Osborn *v.* Robbins, *supra ;* Fisher *v.* Shattuck, *supra ;* Parsons on Bills and Notes 244 ; Brandt on Suretyship and Guarantyship 172.

Mr. Justice PAXSON delivered the opinion of the court May 7th 1879.

In Jamison *v.* Collins, 2 Norris 359, and in one or two subsequent cases not yet reported, it was held that in a writ of error under the Reference Law of April 22d 1874, Purd. Dig. 1939, Pamph. L. 109, this court can hear and determine only questions of law arising upon bills of exceptions to the rulings of the judge relating to the evidence or the law of the case.   It will not go behind his findings of fact,

[Griffith *v.* Sitgreaves.]

except where in a common-law trial before a jury the assignments of error are such as can be heard and determined before this court.

In the case in hand, a trial by jury was dispensed with by agreement under the Act of 1874. The court found the fact that the notes in controversy were signed and delivered by Pyle, the maker, to the plaintiffs, while the said Pyle was under duress of imprisonment and duress *per minas* by reason of threats and acts done by Matthew H. Griffith, one of the plaintiffs.

We are asked to reverse this finding upon the ground that the question as to whether the notes were given under the pressure of duress or not, is a question of law upon the facts proved. We think it plain that duress is a question of fact for the jury. If this had been a common-law trial, it would have been error for the court to have withdrawn the question of duress from the jury upon the ground that there was not sufficient evidence to submit to them. We must apply the same rule where the facts are found by the court. We have nothing to do with the weight of the evidence, and have no power to grant a new trial because we think the finding might and perhaps ought to have been the other way. There was evidence that Pyle was practically restrained of his liberty without arrest under any legal process, and that the process of the law was abused for the purpose of obtaining the endorsed notes in controversey.

We are next to consider the question whether the defendant, who is sued as endorser of the notes, can take advantage of the duress practised upon the maker. In Huscombe *v.* Standing, Cro. Jac. 187, the defendant having been sued on a bond, on which he was surety for one Street, entered a plea that the bond was obtained by duress of his principal. The plaintiff demurred to this plea, and, without argument, it was held that "it was not any plea for the surety, although it had been a good plea for the said Street; for none shall avoid his own bond for the imprisonment or duress of any other than himself. The same doctrine is recognised in Bacon's Abridg., title *Duress* A., and 2 Rolle's Abridg. 124. The later authorities are conflicting, with no adjudicated case in Pennsylvania. Mantel *v.* Gibbs, 1 Brownlow 62; Robinson *v.* Gould, 11 Cush. 55; Plummer *v.* The People, 16 Ill. 358; McClintick *v.* Cummins, 3 McLean 158, and Thompson *v.* Lockwood, 15 Johns. 259, were cited by plaintiffs as sustaining the doctrine that the duress which will avoid a contract must be offered to the party who seeks to take advantage of it. On the other hand, Strong *v.* Grannis, 26 Barb. 122, Osborn *v.* Robbins, 36 N. Y. 365, and Fisher *v.* Shattuck, 17 Pick. 252, were cited on behalf of the defendant as sustaining the opposite view. I have examined these cases with some care, and do not regard them as controlling authority on either side. They depend very much upon the pleadings or their special circumstances. I have no doubt of the correctness of the general

[Griffith *v.* Sitgreaves.]

principle laid down in the older cases that duress, to be a good plea, must be offered to the person who seeks to take advantage of it. As in the case of two joint and several obligors in a bond, a plea by one defendant of duress practised upon the other would be a bad plea, for the reason that if his signature was obtained without duress, of what consequence is it to him that his co-obligor signed under duress? In all the cases cited, the duress was either upon the party seeking to avoid the instrument sued upon, or it was *known* to him. Thus, in Robinson *v.* Gould, *supra*, the action was on a note made by A. to B., to procure the release of C. from an unlawful arrest, brought about by B. Here A. entered into an independent contract, not as surety, but as principal, with a full knowledge of all the facts, and as the court said, upon a sufficient consideration: "The case, therefore," in the language of the court, "is exactly this: A promise by the defendant, upon a valid consideration, fully assented to by him without coercion or restraint of any kind." McClintick *v.* Cummins, 3 McLean 158, decides nothing that affects the case in hand. The court said: "It is not necessary to decide this question (the duress), as, from the facts, it does not appear that the imprisonment of Johnson was unlawful, or that he was detained until he executed the notes." Plummer *v.* The People, *supra*, was a suit upon a recognisance against the principal and the sureties. The principal was committed by a magistrate in the state of Illinois for a larceny committed in another state. Afterwards, the magistrate, in the absence of the accused, and without proof, made out a second *mittimus* for an offence committed within the state. The accused, to relieve himself from confinement, gave the recognisance in question. The defendants pleaded duress, and the court below gave judgment in their favor upon the plea. The court above affirmed the judgment as to the principal, and reversed it as to his sureties, saying: "I do not hold that the same facts might not also have been made available by the sureties, at the proper time, and in a proper form of plea, but they cannot avail themselves of them by a plea of duress of their principal." This case recognises the doctrine I have already suggested, that duress, as a *plea*, is bad if the duress set up was upon some person other than the party pleading it. It also appeared that the sureties had knowledge of the duress when they signed the recognisance. This was also the case in Strong *v.* Grannis, *supra*, cited by the defendant. Here the action was against two persons as makers of a promissory note; the defence set up was that the note was executed under duress of imprisonment of one of the makers, and to procure his release therefrom, and was signed by the other as his surety. The court held that the surety might avail himself of the duress. This was a case in the Supreme Court. Osborn *v.* Robbins, *supra*, was in the Court of Errors and Appeals. The note was given by a

[Griffith *v.* Sitgreaves.]

son, with his father as surety, in settlement of an arrest upon the charge of rape, under circumstances that indicated an abuse of legal process, for the purpose of oppression. The court held that the surety could avail himself of the duress. This case is not authority to the extent claimed for it by the defendant, for the reason that the surety was the father of the defendant. This is one of the exceptions recognised in Huscombe *v.* Standing, and most of the old authorities.

It by no means follows that because duress of another is not a good plea, and that in some instances it may not even avail as a defence, that it cannot be set up successfully in any case. Had the defendant, after endorsing these notes, passed them to the plaintiffs and received the money therefor, it is very clear he could not set up the defence of duress of the maker; so if he had endorsed them with notice of the duress, or if the notes were in the hands of an innocent third party for value. In these and many other instances that might be named, the defence referred to would, for obvious reasons, be unavailing. The case in hand, however, differs materially from them and from all the cases cited. Here the defendant was the surety of the maker, nothing more, and defends under the broad plea of non assumpsit. The form of the transaction is not material, so long as the contention is between the original parties. The defendant's contract is to pay the notes, if his principal fails to do so; and he may be proceeded against immediately upon such failure. But upon payment of the money he has his remedy over against his principal. It is a recognised doctrine in the law of surety, that whatever discharges the principal debtor, also discharges the surety. There are exceptions to the rule, as where one had signed a joint and several note with a married woman as surety: 1 Pars. on Bills and Notes 244. Nor will this rule apply to cases in which a surety is required, for the very reason that the principal *may* have a defence that will defeat the claim against him.

In these and the like cases, the surety knows when he binds himself that he has no remedy over. He is not, therefore, misled. The defendant endorsed the notes without any knowledge, or anything to put him upon inquiry, of the duress practised upon his principal. The result will be, if a recovery is had against the defendant, he will have no redress against the maker, and this by reason of the duress upon the maker, the act of the plaintiffs. He is therefore directly injured by it, and has a right to defend upon that ground. Had he signed the notes with knowledge of the duress, it would have been his own folly, and the consideration being good, the plaintiffs would have been entitled to recover. But they made the mistake of keeping the maker a *quasi* prisoner in New York by threats of an arrest, whilst the notes were sent to the endorser for his signature, thus depriving him of his remedy over

[Griffith *v.* Sitgreaves.]

against his principal.   In doing this, the plaintiffs overreached themselves.

We see nothing in the case to warrant the conclusion that the defendant was estopped by the subsequent conduct of Pyle, the maker, from setting up the duress.

As the case must be affirmed under the foregoing views of the law, it is needless to discuss the Sunday question.   It is an interesting subject, but may well be deferred.

The judgment is affirmed.

# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG 1879.