Ingersoll v. Roe.

---

## CHARLES D. INGERSOLL *vs.* ELIZABETH ROE.

The defence that a note was obtained by unlawful duress is available to the surety, who united in executing it.

The plaintiff, while a partner of O., loaned to him certain certificates of stock, which O. sold, without the knowledge of the plaintiff, and applied the proceeds to his own use. The plaintiff, after fruitless endeavors to collect the money, had O. arrested upon an order of arrest, but released him on his wife's promise to have him at the plaintiff's office the next day. On the next day, O. accompanied by his wife, and his wife's mother (the defendant) came to the plaintiff's office, where the note in suit was made by the wife, and endorsed by her mother. In an action against the endorser, upon the note,

Ingersoll *v.* Roe.

one of the defences set up was that the defendant's endorsement was extorted from her by fraudulent representations, and, among others, that O. had committed an offence that rendered him liable to imprisonment in the State prison, and the threat, by the plaintiff, that unless the defendant gave the note, he would prosecute O. and send him to State's prison; and there was evidence tending to prove the making of such threat. The judged charged the jury that there was no evidence of duress, or undue influence, and submitted to them two questions, viz: 1st. Was the note given for the compounding of a felony; 2d. If it was not so given, did the plaintiff make false representations in regard to his right to send O. to the State prison, and the defendant, for the purpose of avoiding that supposed right, endorsed the note.

*Held* 1. That the judge's charge was erroneous: 1st. In submitting to the jury the question whether the note was given for compounding a felony. 2d. In instructing the jury that there were but two questions—as to the compounding a felony, and the false representations—to be submitted to them.

2. That the question whether undue influence was used should have been submitted to the jury; and that it was error for the court to withdraw that question from the jury, and to charge them that there was no evidence of undue influence; there being sufficient evidence upon that point for the jury to consider, and find whether or not undue influence was used.

One who bargains, in a matter of advantage, with a person placing confidence in him, is bound to show that a reasonable use has been made of that confidence; and contracts cannot be sanctioned if such confidence has been abused.

Whenever one party is so situated as to exercise a controlling influence over the will, conduct and interests of another, contracts then made will be set aside, even upon slight evidence of the improper exercise of such influence.

APPEAL, by the defendant, from a judgment entered on the verdict of a jury, and from an order denying a motion for a new trial, made on the judge's minutes.

The action was brought upon a promissory note, by the endorsee, against the endorser, and the jury found a verdict in favor of the plaintiff, for the amount of the note and interest, $6,481.11.

*J. M. Van Cott,* for the appellant.

I. The note is void, as against the maker. 1. She had not legal capacity to make it, it not being made for the benefit of her separate estate. 2. It was obtained

from the maker under duress and intimidation. (*Eadie v. Slimmon*, 26 *N. Y.* 9. 1 *Story's Eq. Jur.* § 239. *Richards* v. *Vanderpoel*, 1 *Daly*, 71. *Osborne* v. *Robbins*, 4 *Abb. N. S.* 15. *Strong* v. *Grannis*, 26 *Barb.* 122.) 3. And there was undue influence. The plaintiff was an attorney, and the partner of the maker's husband. A species of confidence was reposed in him in the transaction. It was his duty to disclose the maker's incapacity, and it was a fraud to tell the endorser she would have no trouble, and that the note would be paid out of Mr. Owen's estate.

II. The endorsement is void. 1. The note had no legal inception before the defendant endorsed it. (*Catlin* v. *Gunter*, 11 *N. Y.* 368. *Jewell* v. *Wright*, 30 *id.* 259.) 2. The endorsement was made for the accommodation of the maker, without consideration. 3. The plaintiff took the note and endorsement with full knowledge of every fact affecting their validity. He is not a *bona fide* holder, within the rules applicable to commercial paper. (*Erwin* v. *Downs*, 15 *N. Y.* 575. *Coggill* v. *Am. Exch. Bank*, 1 *Comst.* 113.) 4. The plaintiff procured the note by duress, fraud and undue influence. The defendant endorsed not only under the influence of fear, but in ignorance as to her right of recourse against the maker, and on the express assurance of the plaintiff that she would have no trouble about it, and that the note would be paid out of the Owen estate. It is very questionable whether Owen was liable to arrest in a civil action. 5. The time and manner of the arrest; the plaintiff himself becoming bail, and inducing the visit to his office; the absence of any one competent to advise the wife and her mother; the suppression of facts material to be known; the threat to imprison, and the delusive inducement held out that the endorser would not be troubled; are all circumstances fatal to the validity of the transaction.

III. The court erred in denying the motions for a non-

Ingersoll *v.* Roe.

suit. Also in charging, "as matter of law, that there is no evidence of duress and undue influence" in respect of the making of the note; and "that there is no evidence but that Mrs. Roe, in the giving of this note, acted voluntarily, and that she is liable, as far as that defence is concerned in this action." It was also error to direct a verdict for the plaintiff, if the jury did not find either, 1. That the plaintiff took the note to compound a felony, or; 2. "Willfully and knowingly made a false representation in regard to his power over Mr. Owen." If, in the situation of the parties, and under the influence of fear, (and of the representation that the defendant would have no trouble about the note,) they were influenced by a false representation as to the plaintiff's "power over Mr. Owen," they are not liable, whether he made the false representation "willfully and knowingly," or ignorantly and with a blind zeal to secure his own interests at their expense.

*Edward McCarthy*, for the respondent.

I. The motion for a new trial was properly denied. The evidence was overwhelming in support of the verdict, on all the issues. 1. As to the first defence of accommodation, endorsement, &c. The evidence shows that as to the plaintiff she was a business endorser for value. She negotiated for the settlement; she promised to pay $1,000 in cash besides giving the note; she told the plaintiff that she would either sign or endorse; she hoped it could be settled. On the receipt of the endorsement the plaintiff discontinued the action. She said, on leaving, "this note will be paid, you may rest assured." This is corroborated by Owen, who also says that she received extra consideration from him. 2. As to the second defence, of compounding a felony. This defence is founded solely on a letter written after the note was protested for non-payment. The defence was positively denied by the plaintiff. Moreover, since no

felony had been committed, none could have been com-pounded. 3. As to the third defence, of extortion by fraudulent representations. The delay in pleading it should defeat it. But the plaintiff denied all threats and fraudulent representations.

II. This being an endorsement for value, the fact that the plaintiff knew, when he took the note, that it was void as to the maker, constitutes no defence. This point has been expressly decided by the Court of Appeals. (*Erwin* v. *Downs*, 15 *N. Y.* 575. *Coggill* v. *Am. Exch. Bank*, 1 *Comst.* 113.) This disposes of the two excep-tions to the refusal to nonsuit. (*See Ogden* v *Blyden-burgh*, 1 *Hilt.* 182.)

III. But even if this were a purely accommodation endorsement, as it was given on the condition that it should be used for a purpose which could not possibly bind the maker, (viz., for the benefit of the maker's hus-band,) its use thus, rather than being a defence, was but carrying out the intentions of the endorser; and any other use would have released her. Giving the endorse-ment with the knowledge that it was required for this purpose, was equivalent to an agreement with the plain-tiff that it was given for that purpose;. and such an agreement was confessedly a valid consideration, as to the defendant. (*Meyer* v. *Hibsher*, 47 *N. Y.* 269.) And an endorsement is a new and independent contract; it admits the signature and the capacity of every prior party. (*Lambert* v. *Pack*, 1 *Salk.* 127. *Lambert* v. *Oakes*, 1 *Ld. Raym.* 443. *Critchlow* v. *Parry*, 2 *Campb.* 182. *Woodward* v. *Harbin*, 1 *Ala. N. S.* 104. 2 *Greenl. on Ev.* § 266. *Chitty on Bills*, 461.)

IV. As to the exceptions to the judge's charge. 1. The first exception is without merit, for the jury were distinctly told that the "discontinuance of the proceed-ings" was a good consideration "provided" the endorse-ment was given upon the faith of the discontinuance, and it was left to the jury to determine whether it was

so given or not. (1 *Pars. on Cont.* 368, 369, 2*d ed. Bellows* v. *Folsom*, 2 *Rob.* 138. 1 *Pars. on Notes and Bills*, 198, *and cases cited in note.*) 2. As to the second exception, if its point is that other questions should have been submitted to the jury, it fails to suggest the defect, and should certainly have been accompanied by a request to submit the question or questions omitted. 3. As to the third exception, the judge did not determine, himself, the question of consideration; it was submitted fairly to the jury. But even if he had determined it, still the defendant, by failing to request that the question be submitted to the jury, gains nothing from the exception alone, for there was abundant evidence in proof of the fact charged. (*Dows* v. *Rush*, 28 *Barb.* 157. *Mallory* v. *Tioga R. R.*, 5 *Abb. N. S.* 420.) 4. There was no exception to that part of the charge holding that there was no evidence of duress except indirectly, and exceptions must be direct. The question raised by the third defence, and the testimony of Mrs. Roe to that point, were fairly submitted to the jury. It makes no difference whether the judge called the question one of "duress" or one of "false representations." The question was fairly submitted to the jury, and was passed upon by them. (*Sperry* v. *Miller*, 16 *N. Y.* 407–413. *Fleming* v. *Gilbert*, 3 *John.* 528–533, *and cases cited. Caldwell* v. *N. J. S. Co.*, 47 *N. Y.* 282, 286, 287.) And there was no request to submit the question. But there was no proof of legal duress. It was shown by the defendant, (though that was expressly contradicted by the plaintiff,) that the plaintiff had made use of threats in respect of Mr. Owen, that he might be sent to State's prison, etc. Assuming that these intimidations were given by the plaintiff, and that on the strength of them the endorsement was made, the plea avails nothing. So far from amounting to duress, the words said to have been used do not even constitute a case of fraudulent misrepresentation, and the court

erred in favor of the defendant in having charged the contrary. There are three elements essential to fraudulent misrepresentation: 1st. The false statement of a fact. 2d. Knowledge by the party making the false statement that it was false, and an intention to deceive or mislead by the falsehood. 3d. Acquiescence and consequent conduct by the person to whom this misrepresentation was made. In this case, the plaintiff did not willfully misrepresent any fact; neither did the defendant act upon any untrue statement.

*By the Court,* FANCHER, J. In January, 1868, the plaintiff, while a partner with Edward J. Owen, loaned to him some certificates of stock in the Ætna Insurance Company, which Owen sold, without the knowledge of the plaintiff, and applied the proceeds to his own use. The plaintiff endeavored to collect the money, without avail. Owen resided in Elizabeth, New Jersey. In April, 1869, as Owen, with his wife, who was then in a delicate situation, was returning from the funeral of his father, he was arrested at the ferry in New York, by a deputy sheriff, accompanied by the plaintiff, upon an order of arrest which had been granted on the plaintiff's application.

After a few minutes, the plaintiff himself signed the bail bond to the sheriff, and consented to let Owen go, upon the promise of his wife that she would have him at the plaintiff's office, the next day. The next day, April 23, 1869, the wife, her husband and her mother, came to New York, and the two women went into the plaintiff's office, where he was present, while Owen remained outside. The defendant testified: "My daughter was in a very delicate situation, and very much overcome with grief, and I went, as any mother would do, to rescue her daughter." "I went for company with my daughter, for she was not fit to go to the office alone."

Ingersoll *v.* Roe.

Both the plaintiff and the defendant were examined on their own behalf, on the trial. They do not fully agree in their several statements of what transpired. A note for $5,750 was drawn, and the defendant testifies: "My daughter gave me the note; I made the remark, 'Alice, why did you not tell me about this so I could have time to reflect before I came here?' Mr. Ingersoll says: 'There is no trouble about this; when Mr. Owen administers on his father's estate it will be paid; you will have no trouble about it;' thereupon I signed it; it was before I signed the note that the remarks were made about this being a State's prison offence; I do not recollect the precise language Mr. Ingersoll used; but do the substance; that he must be secured in some way, or he would not release Mr. Owen."

"Q. Did Mr. Ingersoll tell you if you did not endorse this note, he would send your son-in-law to State's prison?" "A. Yes; he told my daughter so too; he used that language; he said he was very sorry to have this trouble with Mr. Owen, but he must be secured, else he would go to the extent of the law, and send him to State's prison."

The plaintiff denies that he said anything about the State's prison; but a letter from him to the defendant, written after the protest of the note, contains this language: "Mr Owen is still liable to arrest, and if I choose I can put him in Ludlow street jail, by a civil proceeding, until the debt is paid; or I can proceed against him criminally, and send him to Sing Sing prison as a convict, and render his name infamous forever."

One of the defences set up in her answer, by the defendant, was "that her endorsement of the said note was extorted from her by fraudulent representations, and among others that Edward J. Owen, the defendant's son-in-law, had committed an offence that rendered him liable to imprisonment in State prison, and the threat by the plaintiff that unless she gave the same he would prose-

cute the said Owen and send him to State's prison, and that the defendant endorsed said note under fear of such prosecution and imprisonment, and that she received no consideration whatever therefor."

The learned judge, at the trial, charged: "There is contained in the answer an allegation that the note was obtained from Mrs. Owen by reason of duress and undue influence. I shall charge you, as a matter of law, that there is no evidence of duress or undue influence; that there is no evidence but that Mrs. Roe, in the giving of this note, acted voluntarily, and that she is liable as far as that defence is concerned in this action." "Therefore I say if you find there was consideration for the support of this note, by the discontinuance of the action and the proceedings under the arrest, the endorsement had a good consideration. Consequently there remain but two questions that it is necessary for me to submit to you in connection with this matter: 1st. Was this note given for the compounding of a felony. 2d. If it was not so given, for the purpose of compounding a felony, did Mr. Ingersoll make false representations in regard to his right to send Mr. Owen to State's prison, and that for the purpose of avoiding that supposed right of Mr. Ingersoll, Mrs. Roe endorsed this note, and for no other purpose ?"

The counsel for the defendant excepted to so much of the above charge as instructed the jury that the discontinuance of the action and the proceedings against Owen was a sufficient consideration to support the endorsement of the note; and also to the charge that "If the jury find that there was consideration for the support of this note by the discontinuance of the action, and the proceedings under the arrest, the endorsement had a good consideration;" and also to so much of the above charge as instructed the jury that there remained but two questions, that it was necessary to submit to them; first, was this note given for the compounding of

Ingersoll *v.* Roe.

a felony; second, did Mr. Ingersoll make false representations in regard to his right to send Mr. Owen to State's prison? And also to that portion instructing the jury that unless that element entered into the case the plaintiff would be entitled to recover, because there was sufficient consideration for the support of the note.

There could not, on the evidence, be any proper ground for submitting to the jury for their determination, the question whether the note was given for compounding a felony. It had, perhaps, some tendency in diverting the minds of the jury from the true inquiries in the case. No pretence can be made that any felony had been committed; so none could have been compounded; and the submission to the jury of an inquiry of that description, was inappropriate to the proper considerations they were called upon to make.

Nor was it correct to instruct the jury that there were but two questions—as to the compounding a felony, and the false representations—to be submitted to them. Another, and most important question, fairly arose upon the testimony, and should have been, under proper instructions, submitted to the jury; and that question was whether the note and endorsement were obtained by undue influence. It was certainly error for the court to withdraw that question from the jury and to charge them that there was no evidence of undue influence. Upon the testimony above detailed there was sufficient evidence for the jury to consider, and find whether or not undue influence was used. The plaintiff was a lawyer. He was dealing with two women, one of whom was suffering under infirmity of body, and both of whom were greatly excited in mind. They had no opportunity of independent, professional, or other advice, and were not competent to determine whether the plaintiff had the professed power to send Owen to the State's prison or not. If advantage was taken, by that threat, or other representations of the plaintiff, so that the signature to

the note, and the endorsement of it, were made under the apprehensions and fears thus improperly excited, it was undue influence, within the principle of numerous authorities. An unfounded fear, created by the plaintiff in the minds of those women, that the husband of the one, and who was the son-in-law of the other, would be sent to State's prison, was undue influence of the most positive description, and if the women were so igno-rant, as probably they were, of the hollowness of the threat, as to entertain fears that it would at once be put into execution, they became a prey to the designed exertion of the plaintiff's undue influence upon them. The parties did not treat on equal terms; the plaintiff was acquainted with the false nature of the threat; the women were not. They falsely supposed the reputation of the family in danger; the other took advantage of that apprehension to procure a note and endorsement, which, probably, would not otherwise have been made. If a representation be made by one to another, who is about to deal in a matter of interest upon the faith of that representation, it must be correct and truthful; and one who bargains, in a matter of advantage, with a person who places confidence in him, is bound to show that the confidence was not abused. (*Whelan* v. *Whelan,* 3 *Cowen,* 537.) It is familiar law, that if one is induced by undue influence to make a disposition of property, differently than would have been made without it, no advantage can be gained by reason of the improper influence. (*Clark* v. *Fisher,* 1 *Paige,* 176. *Ex parte Fearon,* 5 *Vesey,* 633.) Lord Eldon laid down the rule, that "*he who bargains in a matter of advantage, with a person placing confidence in him is bound to show that a reasonable use has been made of that confidence;*" and our own courts have often held that contracts cannot be sanctioned if such confidence has been abused. (*Brice* v. *Brice,* 5 *Barb.* 541.) Whenever one party is so situated as to exercise a controlling influence over

the will, conduct and interests of another, contracts then made will be set aside, even upon slight evidence of the improper exercise of such influence. (*Sears* v. *Shafer*, 6 *N. Y.* 268. *Casborne* v. *Barnsham*, 2 *Beav.* 75. *Dent* v. *Bennet*, 7 *Simons*, 539. *Wood* v. *Downes*, 18 *Vesey*, 120. *Huguenin* v. *Baseley*, 14 *id.* 273. *Eadie* v. *Slimmon*, 26 *N. Y.* 9.) The defence that a note was obtained by unlawful duress, is available to the surety who united with him in the execution, (*Osborn* v. *Robbins*, 36 *N. Y.* 365;) but here, the improper influence may have been exercised on both the maker and the endorser of the note; and, misapprehending the nature of his offence, they may have relied upon the pretended power of the plaintiff, as to the alleged charge against Owen, and thus have been induced to make and endorse the note to avoid the scandal and peril of a supposed, but fictitious, accusation. This was a question that should have been submitted to the jury.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

[First Department, General Term, at New York, May 5, 1873. *Ingraham* and *Fancher*, Justices.]

