(1 App. Div. 224.)

GIRTY v. STANDARD OIL CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   February 4, 1896.)

1. DURESS—THREATENING TO COMMIT SUICIDE.
    A threat by a man to his wife that unless she signed certain papers, he would be arrested for embezzlement, and would commit suicide, does not constitute duress.   Pratt, J., dissenting.

2. CANCELING DEED—PROOF OF FRAUD.

In an action to cancel a deed on the ground that plaintiff was induced to execute it by false representations of her husband, acting as defendant's agent, and that plaintiff did not know the nature of the instrument, it appeared that, when the husband, who was accused of embezzlement from defendant, asked plaintiff to sign certain papers, she said that she did not want "to sign her home away," but that, on being assured that it was a mere matter of form, by which plaintiff would lose nothing, she signed the paper without reading it. *Held*, insufficient to show fraud. Pratt, J., dissenting.

3. DEED—CONSIDERATION.

An agreement by a corporation to waive a large money claim against an employé accused of embezzlement, and to retain him in its employ, is sufficient consideration for a deed to such corporation by the employé's wife.

Appeal from special term.

Action by Caroline E. Girty against the Standard Oil Company of New York to set aside a deed for fraud and duress. From a judgment dismissing the complaint upon the merits, plaintiff appeals. Affirmed.

Argued before BROWN, P. J., and PRATT, BARTLETT, and HATCH, JJ.

Charles G. F. Wahle, for appellant.
Joseph H. Choate, for respondent.

BARTLETT, J. In the month of March, 1883, the plaintiff in this action, then upward of 60 years of age, joined with her husband, George W. Girty, in the execution of a deed whereby there was conveyed to the Standard Oil Company of New York, a house and lots in the city of Cleveland, Ohio, which property stood in the name of the plaintiff. The present suit (which was not commenced until September, 1894) is brought to set aside that conveyance, on the ground that the plaintiff was induced to sign the deed by duress, exercised upon her by her husband, acting as the agent of the Standard Oil Company, and by misrepresentations made by him in the same capacity. The duress is alleged to have consisted of threats to commit suicide, on the part of the husband, who proposed at the same time that his wife should commit suicide with him. The alleged misrepresentations consisted in telling the plaintiff that the conveyance was simply a paper to secure the Standard Oil Company, and that she would not lose anything by signing it. The defense set up in the answer was that the plaintiff's husband had been in the employ of the Standard Oil Company, having charge of its moneys and books of account; that in February, 1883, it was discovered that he had embezzled upward of a quarter of a million dollars, belonging to the corporation; that he had to a great extent paid for the Cleveland property in question, which stood in his wife's name, out of the moneys thus embezzled; and that the conveyance of that property, now sought to be set aside, was made by way of reparation for the embezzlement by the husband, and to save his good name. The defendant, however, was not called upon to offer any proof in support of these allegations in the answer; for, at the end of the plaintiff's case, the court below dismissed the complaint

on the merits. From the judgment in favor of the defendant, entered upon its dismissal, the plaintiff has appealed.

The trial judge found, as matter of fact, that there was no fraud, misrepresentation, duress, or undue influence in procuring from the plaintiff the conveyance mentioned in the complaint, and, furthermore, that the action was barred by the statute of limitations and the laches of the plaintiff. The counsel for the appellant contends that both these conclusions are erroneous. I have carefully read through this record, and it seems to me that the evidence fully justifies the decision in all respects.

The allegation as to duress was not sustained by the proof. The husband told the wife that he was accused of embezzlement, and wanted her to sign some papers; that if she signed them, he would go on with the same salary in the employ of the Standard Oil Company, and nobody would ever know it; that if she did not, he would be arrested, and never could stand that disgrace, but would commit suicide, and she had better commit suicide with him. There is authority to the effect that a threat on the part of a son to commit suicide does not, in any legal sense, constitute duress, so as to invalidate an instrument claimed to have been executed by his mother in consequence of such threat. Insurance Co. v. Meeker, 85 N. Y. 614. And it has also been held that a threat by a husband to poison himself, whereby a wife was induced to sign a promissory note, did not amount to duress in law. Wright v. Remington, 41 N. J. Law, 48. In the case last cited the supreme court of New Jersey declared that there was no trace of a doctrine in the law that the threat of a husband against himself would avoid the contract of his wife, and used this language, which is peculiarly applicable to the case at bar:

"It may be that, had the payees of the note, or their agent, threatened to take the life of the husband unless the wife signed the note, and she signed under the influence of the terror excited by such threats, it would have avoided the contract. But here the threats were made by the husband against his own life. The maker and the object of the threats were the same. Their execution was within his own power of volition. The wife knew that no harm would come to him except by his own act. The present case is utterly unlike an instance of the presence of some overshadowing danger, uncontrollable by either the wife or the person endangered."

All this could be said just as truly of the alleged duress in the present case, if we substitute the deed for the note, and the grantees named in the deed for the payees named in the note. Considering Mrs. Girty's testimony as a whole, I think it indicates that she was actuated in what she did, not by fear that her husband would kill himself, but by a praiseworthy desire to help him out of the difficulties in which he was plunged in consequence of the charge that he was a defaulter to the Standard Oil Company. The trial judge was at liberty to adopt this view, or any other which could fairly be derived from the evidence; for he disposed of the case, not as upon a nonsuit, but on the merits.

As to the suggestion that the wife should commit suicide, there is absolutely nothing in the case to show that she had the slightest fear of any compulsion in that direction. In her narrative of what

occurred at the time she signed the conveyance, the plaintiff thus states the alleged fraudulent misrepresentation:

"At the time my husband asked me to sign these papers, he said I would not lose it; that it was only a matter of form; that I should have it back again."

It is apparent that, when this was said, she must have known the character of the instrument she was about to execute; for she had previously answered her husband, when he first asked her to give him her signature, by saying, "George, I don't want to sign my home away." No phrase in common use is more expressive of the idea of conveying real property to another than the words "to sign my home away." Its meaning seems to me unmistakable. Its use by the plaintiff leaves no doubt in my mind that Mrs. Girty was well aware of the nature of the conveyance to which she says she attached her name without reading it. If she did know what it was, the statements of her husband which are relied upon as misrepresentations were nothing more than consolatory assurances on his part, expressive of the hope that the property might some time be restored.

In the complaint, the value of the property, with the fixtures and chattels therein contained, is stated at $110,000. According to the plaintiff's testimony, her only contribution towards the acquisition of this real and personal estate was $5,000, given to her husband some time in the 50's. She conceded that it was, for the most part, his property, standing in her name. When the charge of embezzlement was made against Mr. Girty, while he denied the accusation in words, his conduct was such as to indicate that it was true. But, however great may have been the wife's confidence in his honesty, her evidence shows that she must have realized that a large money claim was made by the Standard Oil Company against her husband on account of his alleged defalcation, and she executed the deed to relieve him from that claim. There is no proof that the claim was not well founded, and the acts of Mr. Girty tended to show that it was. He appears to have been retained in the service of the corporation in consequence of the conveyance, when, otherwise, he would have been discharged; and this constituted a sufficient consideration.

The expression to which I have already referred in regard to signing away her home, which the plaintiff testifies she used when asked to sign the deed, affords the clearest evidence that she knew every essential fact constituting her alleged cause of action more than 10 years before the present suit was brought. Further proof in support of the plea of the statute of limitations is to be found in the plaintiff's contemporaneous execution of a paper conveying the furniture in the Cleveland house to the defendant, and the steps which she took to prevent some furniture which belonged to her daughter from passing under that bill of sale.

Some criticism of the oral opinion of the trial judge is contained in the brief for the appellant, on account of the assumption of the court below that Mr. Girty had, as matter of fact, embezzled the money which he was accused of embezzling. I am unable to see, however, how this assumption could have affected the result. It

was enough that the plaintiff's husband was accused of the defalcation, and acted as though the charge was true.

The appellant was not harmed by the exclusion of the evidence mentioned in the fifth point of the appellant's brief. The judgment seems to me to be right, on the facts and on the law, and I am in favor of affirmance.

Judgment affirmed, with costs.

BROWN, P. J., and HATCH, J., concur.

PRATT, J. (dissenting). This action is brought to set aside a conveyance of property valued at $105,000, made by a wife, without consideration moving to her, at the request of her husband. The proof shows that plaintiff's son died on March 10th, and on the 19th, upon her return from the funeral, her husband informed her that he was falsely accused by the Standard Oil Company of having taken their property, and that, if she did not sign the papers that had been prepared, and were there present, he would be arrested, in which case he could not stand the disgrace, and would take his life. He said she would not lose the property; that it was only a matter of form, etc. She had no previous notice of what was required of her, had no counsel present, nor independent advice, and then and there, without further consideration, and in the presence of the company's agent, executed the papers. She believed he was in danger of arrest, and may have thought that in such case he would take his life.

The principles on which a court of equity proceeds in such cases are familiar. In the recent case of Dignan v. Dignan (N. J. Ch.) 14 Atl. 887, it is held that, where one enters into an agreement, without giving the matter the slightest thought or consideration, under such circumstances that it is perfectly apparent that he acted under some unhappy influences, or some superior power, he should be released from such obligation unless superior equities have arisen. In Sistare v. Heckscher (Sup.) 18 N. Y. Supp. 475, the wife was suddenly appealed to to execute a security for her husband's debt. She was told it was only a matter of form, but that if she would execute it the creditor would advance money to help her husband. It does not appear that any threats were made against the husband, but the deed was set aside, although the creditor was not a party to the undue influence, which the court characterized as fraud. The rule on which courts proceed was stated in Sercombe v. Sanders, 34 Beav. 385, as follows:

"Creditors should understand that they cannot improve their security, taken from persons to whom they have given credit, by inducing them, at the last moment, to compel near relations or persons under their influence to pay their debts."

In that case there were no threats nor false representations; but, the party having acted hastily, and without independent professional advice, the deed was set aside. The court says:

"It is not sufficient that a man knew what the actual transaction was. You must also show that he is emancipated from control, and had the advantage

of a separate solicitor, who would naturally have said to him, 'You must understand you are giving up your share forever,' etc."

In Berdoe v. Dawson, 13 Wkly. Rep. 420, the master of the rolls held that, where a person takes from a son a security for a debt due by the father, he incurs the strongest obligation to prove, beyond a reasonable doubt, that the transaction is a righteous one, that the son understood it perfectly, and was not acting under undue influence which the father possessed over him. That to subject a woman to the fear of the arrest of her husband or other near relative, in order to procure a conveyance of her property, is exercising undue influence, would seem not to require authority. Yet it is found in abundance. Ingersoll v. Roe, 65 Barb. 355; Eadie v. Slimmon, 26 N. Y. 9 —15. See, also, McCandless v. Engle, 51 Pa. St. 309; Stiles v. Stiles, 14 Mich. 72; Wilson v. Bull, 10 Ohio, 250; Boyd v. De La Montagnie, 73 N. Y. 502; Witbeck v. Witbeck, 25 Mich. 442; Wiley v. Prince, 21 Tex. 637.

The application of these principles to the case at bar is easy. If an attempt was to be made to influence plaintiff, a woman in advanced years, to deprive herself of a fortune to please her husband, the simplest rule of honesty required that she should have ample notice, and the assistance of those who were competent to advise her, and not adversely interested. She should not have been subjected to the influence of her fears. The burden of proof was upon defendants to show, in the language of Lord Eldon, that their case was a righteous one. When it appears that she parted with a large property without consideration moving to her, the presumption of fraud arises, and must be overcome by proof. Silverthorn v. Troxall (N. J. Ch.) 12 Atl. 614. When it further appears that plaintiff was required to sign a deed previously prepared without notice to her, that she had no opportunity to get advice from disinterested parties, and her feelings were worked upon by her fear of her husband's arrest, the evidence of undue influence is irresistible. To expose her to such influence was a fraud.

It is suggested that the lapse of time has deprived plaintiff of her rights. We do not see that she was fully apprised of the facts upon which her rights depended until 1892. She owed defendants no duty of active vigilance, and she seems to have been under fears for her husband so long as he lived. The delay has not injured defendants, and raises no equity in their favor.

The judgment should be set aside, and new trial granted; costs to abide the event.